**HAMPTON & ROYCE, L.C.**
**United Building, Ninth Floor**
**119 West Iron Avenue**
**P.O. Box 1247**
**Salina, Kansas 67402-1247**
**(785) 827-7251 - Telephone**
**(785) 827-2815 - Telecopier**
**www.hamptonlaw.com - Internet**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Anne Warkentine ) | |
|         Plaintiff, ) | |
|   vs. ) | Case No.: 11-CV-4022-JAR/KGG |
| ) | |
| Salina Public Schools ) | |
| Unified School District No. 305 ) | |
| ) | |
|         Defendant. ) | |
| _____) | |

### SECOND AMENDED COMPLAINT

COMES NOW Anne Warkentine, ("Anne") by and through her attorneys, Hampton & Royce, L.C., and for her Complaint against Salina Public Schools Unified School District No. 305 ("U.S.D. 305") states and alleges as follows:

1.      Anne is a resident of Salina, Saline County, Kansas.

2.      U.S.D. 305 can be served with process by delivering a copy of the Petition and Summons to the Superintendent of Schools at 1511 Gypsum, P.O. Box 797, Salina KS 67402-0797.

1

3. Anne was a teacher in a certified position employed by U.S.D. 305 for thirty (30) consecutive years.[1]

4. Anne was employed by U.S.D. 305 continuously, without any break in service, from 1980 through 2010.

5. Anne commenced her teaching career at U.S.D. 305 during the 1980-1981 school year.

6. Anne retired from her teaching career at the end of the 2009-2010 school year.[2]

7. At the time Anne commenced her teaching career with U.S.D. 305 during the 1980-1981 school year, U.S.D. 305 provided its teachers with an Early Retirement Incentive program.

8. The Early Retirement Incentive program provided, in part, as follows:

    A.     Voluntary Early Retirement Incentive

    1)     Teachers of U.S.D. 305 who may find it necessary or desirable to retire from employment with the District prior to normal retirement age may elect to take early retirement under the terms and conditions set forth in this policy. Early retirement is entirely voluntary and at the discretion of an eligible employee.

    2)     Eligibility - A teacher is eligible for early retirement if such teacher

        a)     is currently a full time employee,
        b)     has 15 years or more of employment service with the school district,

---

[1] Anne was a teacher for the Topeka, Kansas School District No. 501 during the 1978-1979 and 1979-1980 school years before moving to Salina, Kansas.

[2] Although receiving a clock recognizing her retirement and years of service, U.S.D. 305 omitted her name from the list of retiring teachers provided to the Salina Journal for publication and recognition.

  c)  will be 64 years of age or less on August 31 of the year the employee plans to retire and has a combined total of age plus credited years of service in KPERS that is equal or greater than 85,

**OR**

  d)  meets the requirements of a) and b) above, and is not less than 60 years of age and not more than 64 years of age on August 31 the year the employee plans to retire.

9.  The Voluntary Early Retirement Incentive was an unfunded, defined benefit plan for the benefit of U.S.D. 305 employees with 15 or more years of employment service with U.S.D 305 creating a liability for U.S.D. 305 in the amount of "$35,000 or $7,000 per year which ever was less" for each such eligible employee.

10.  Having commenced her career with U.S.D. 305 in 1980, Anne satisfied parts a) and b) of the Voluntary Early Retirement Incentive at the commencement of the 1995-1996 school year.  The only part she did not satisfy was part c).

11.  The Voluntary Early Retirement Incentive program remained in effect until the commencement of the 2002-2003 school year when it was amended, in part because of the unfunded liability of U.S.D. 305 to its employees with 15 or more years of employment with U.S.D. 305.  This amendment included a two part revision: the Employer and Employee Paid Contributions ("Part A") and the Phase Out Option ("Part B").

12.  Part A is a funded defined contribution plan consisting of two accounts: an Employer Paid Account and an Employee Paid Account.[3]  Under this defined contribution plan, the School District agreed to deposit $1,000 per year[4] into each full time teacher's Employer Paid

---

[3]Contributions by the teachers to the Employee Paid Account is voluntary.

[4]Prorated for teachers who worked less than full time or worked less than a full contract year.

Account. At the commencement of a teacher's 6th "contiguous" year, each teacher becomes vested in the Employer Paid Account at the rate of 10% per year, until the teacher is fully vested (100%) at the beginning of his or her 15th "contiguous" year with U.S.D. 305.[5]

13.     Part B is a carry-over of the Early Retirement Incentive Program (the unfunded defined benefit plan) and is only available to teachers who <u>were employed during the 2002-2003 contract year</u>, <u>retire prior to the 2018-2019 contract year</u>,[6] and <u>meet the other eligibility requirements</u>. Part B was included to protect the teachers who already had years of service at the time of creation of the Part A benefit so they would not lose their earned benefits under the Early Retirement Incentive program.[7]

14.     Under Part B, eligibility is defined as follows:

Eligibility- A teacher may choose the Phase Out Option if he/she

"a.     Was a full-time teacher in a certified position by U.S.D. 305 during the 2001-02 contract year.

b.     Has 15 years or more of full-time employment as a teacher in a certified position with U.S.D. 305 (uninterrupted by any other employment) immediately prior to retirement.

---

[5] Note that the 100% vesting of a teacher starting work for U.S.D. 305 during the 2002-2003 would be at the commencement of the 2018-2019 contract year, which coincides with the Part B requirement that retirement occur prior to the commencement of the 2018-2019 contract year.

[6] This coincides with the 100% vesting schedule for teachers employed with the School District for the 2002-2003 contract year.

[7] Based on calculations and projections of growth and earnings by U.S.D. 305, it was estimated by U.S.D. 305 that those teachers employed during the 2002-2003 school year would have Part A benefits exceeding the Part B benefit by the 2018-2019 school year and therefore they would not exercise their part B option and would elect to take the Part A benefit.

      c.      Will be less than the age for full Social Security retirement as of August 31 of the year he/she plans to retire.

      d.      Retires prior to the 2018-19 contract year.

      e.      Has a combined total age plus credited years of service in KPERS that is equal to or greater than 85.

**OR**

      f.      Meets the requirements of a, b, c and d above and is not less than 60 years of age by August 31 of the year he/she retires."

15. Before the Part B Phase Out Option was agreed to, U.S.D. 305, through its negotiating team, told teachers that the Phase Out Option was for the purpose of protecting and not harming teachers who had accumulated years of service.

16. U.S.D. 305 told teachers that in amending the Early Retirement Incentive it wanted to prevent teachers from transferring out of the school district only to later return to aggregate their total years of service to U.S.D. 305 for purposes of qualifying for the Part B Phase Out Option. So U.S.D. 305 included the language "(uninterrupted by any other employment) immediately prior to retirement" to the Eligibility section, subpart b.

17. Anne applied for the Phase Out Option retirement benefit provided by U.S.D. 305 and was denied, despite having thirty (30) consecutive and uninterrupted years as a certified teacher with U.S.D. 305.

18. At the request and suggestion of U.S.D. 305, Anne was employed as a half-time teacher for the 1995-96 and 1996-97 school years. Anne was a full time teacher for the remainder of her thirty (30) years employed by U.S.D. 305.

19. U.S.D. 305's explanation for denying Anne the benefits of the Phase Out Option is that Part B requires 15 or more "consecutive" years of full time employment as a teacher in a certified position(uninterrupted by any other employment) immediately prior to retirement. Because of Anne's part-time employment during the 1995-1996 and 1996-1997 school years, she had only thirteen (13) "consecutive" years of employment immediately prior to the time of her retirement.

20. The Part B Phase Out Option does not require "consecutive" years of full time employment at the time of retirement to be eligible for the Part B Phase Out Option. It requires "uninterrupted" service. Anne satisfied this requirement.

21. By denying Anne the Part B Phase Out Option benefits ($35,000), and providing only the benefits under Part A ($8,589.17), U.S.D. 305 deprived Anne of a vested benefit to which she was entitled.

22. U.S.D. 305 has stated that it will save a significant amount of money by having denied or by denying in the future this benefit to 238 other teachers similarly situated with Anne.

23. Anne has completed the Negotiated Agreement's grievance procedure, including non-binding arbitration.

24. Anne has complied with the Kansas Tort Claims Act in providing notice to U.S.D. 305. A copy of said notice is attached hereto as Exhibit "A" and incorporated by reference herein.

**Count I: Breach of Contract**

25. U.S.D. 305 entered into a contract with Anne under which she was entitled to the Part B Phase Out Option. U.S.D. 305 breached this contract by its course of conduct explained above.

26.  U.S.D. 305 has previously stated that it will save a significant amount of money by interpreting the requirement that the 15 years be "consecutive" and thereby denying 238 teachers this benefit.

## Count II: Promissory Estoppel

27.  U.S.D. 305 reasonably expected to induce Anne, and did induce Anne to rely on U.S.D. 305's promise that the Part B Phase Out Option would not negatively impact teachers with accumulated years of experience.

28.  Anne reasonably relied on U.S.D. 305's promise that the 2002-2003 amendment would not harm teachers with accumulated years of service.

29.  Anne relied to her detriment on the promises and representations made to teachers during the negotiation of the amendment to the Part B Phase Out Option .

30.  U.S.D. 305 refused to honor its promises made to Anne. U.S.D. 305's refusal was willful and was not the result of mistake or inadvertence.

31.  As a direct result of U.S.D. 305's unlawful conduct, Anne has suffered a significant loss.

32.  Anne, seeks the full promised Part B Phase Out Option and such other legal and equitable relief as the Court deems just and proper.

## Count III: Violation of the Contract Clause of the United States Constitution

33.   Anne has a vested right in the Part B Phase Out Option due her for her employment with U.S.D. 305.

34. U.S.D. 305's new interpretation of the Part B Phase Out Option is in fact a denial of a vested right without a corresponding benefit in violation of the Contract Clause of the United States Constitution.

### Count IV: Breach of Covenant of Good Faith and Fair Dealing

35. The negotiated agreement provides a grievance procedure to resolve any alleged" violation, misinterpretation, or misapplication of [the] negotiated agreement."

36. The grievance procedure is intended to secure "equitable solutions"to disputes.

37. The negotiated agreement is subject to the implied covenant of good faith and fair dealing.

38. Administration consistently emphasized throughout the grievance procedure the cost to U.S.D. 305 would greatly damage U.S.D. 305's financial position if Anne received the Part B Phase Out Option.

39. For example, during the grievance procedure, administration for U.S.D. 305 represented to the U.S.D. 305 school board and the arbitrator providing the advisory arbitration that if Part B Phase Out Option that:

> "Any further extension of benefits to employees who do not meet the specific eligibility requires set forth in Article VIII Phase out Option would have an adverse financial impact on the school district's operating budget. To adopt Ms. Warkentine's counsel's interpretation of the Phase out Option would make 238 additional employees eligible for the Phase Out option at a cost of $8,330,000.00."

40. It has since been discovered that there are not 238 additional employees who would be eligible for the Phase Out option, but in fact, just two; Anne, and one other employee.

41. U.S.D. 305 breached its duty of good faith and fair dealing by arguing to the school board and the arbitrator that the cost to award Anne the Part B Phase Out Option, and the corresponding 238 other individuals in a similar position as Anne, would be cost prohibitive.

WHEREFORE, Anne prays for relief as follows:

A. The entry of an Order requiring U.S.D. 305 to pay the full Part B Phase Out Option to Anne;

B. Attorneys' fees and costs incurred prosecuting this claim; and

C. Such further relief as the Court deems just and equitable.

       s/Nathanael Berg
Nathanael Berg, #22204, and
David D. Moshier, #9477 of
HAMPTON & ROYCE, L.C.
119 W. Iron, Ninth Floor
P.O. Box 1247
Salina, Kansas 67402-1247
(785) 827-7251
(785) 827-2815 Facsimile
Attorneys for Plaintiff

**Demand for Jury Trial**

Anne requests a trial by jury on all issues that may be tried by jury.

       s/Nathanael Berg
Nathanael Berg