IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANNE WARKENTINE,                )
                                )
              Plaintiff,        )
                                )
     v.                         )        Case No. 11-4022-RDR
                                )
SALINA PUBLIC SCHOOLS,          )
UNIFIED SCHOOL DISTRICT NO. 305 )
                                )
              Defendant.        )
_____

## MEMORANDUM AND ORDER

Plaintiff was a teacher for defendant school district from 1980 to 2010.  For two years, 1995 and 1996, plaintiff worked half-time as a teacher for defendant.  Plaintiff decided to retire in 2010 and attempted to take advantage of an early retirement incentive program which provided $35,000.00 to eligible teachers.  According to defendant's contract with its teachers, to qualify for the early retirement incentive – known as the Phase Out Option – a teacher had to have "15 years or more of full-time employment as a teacher in a certified position with U.S.D. 305 (uninterrupted by any other employment) immediately prior to retirement."  Even though plaintiff had 28 years of full-time employment as a teacher with defendant and 30 years of uninterrupted employment as a teacher with defendant, defendant refused to find plaintiff eligible for the $35,000

amount because plaintiff did not have 15 years of uninterrupted full-time employment as a teacher "immediately prior to retirement." Plaintiff was told she needed to work two more years as a full-time teacher to qualify for the $35,000.

Plaintiff has brought suit against defendant alleging: breach of contract; promissory estoppel; a Contracts Clause claim; and breach of good faith and fair dealing. There is also an issue of whether plaintiff may pursue reformation as a remedy in this case.

This case is now before the court upon defendant's motion for summary judgment (Doc. No. 52), plaintiff's motion for partial summary judgment (Doc. No. 50), and plaintiff's objections to orders by United States Magistrate Judge Gale (Doc. No. 60).

I.  Summary judgment standards

Summary judgment is proper if the moving party demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The court views the evidence in a light most favorable to the nonmoving party. Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002). A fact issue is material if its resolution is essential to the proper disposition of a claim. Wright ex rel. Trust Co. of Kan. V. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001). A

factual dispute is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007). In other words, the court may consider evidence produced by the moving party as well as the absence of admissible evidence in favor of an essential element of the non-moving party's claim. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

II. Uncontroverted facts

Plaintiff worked as a teacher for defendant from 1980-2010, uninterrupted by any other employment. For her first fifteen years (1980-1995), plaintiff worked as a full-time teacher for defendant. In 1995, plaintiff split time with another teacher and worked two half-time years until she returned to full-time employment in 1997. She remained a full-time teacher until retirement in 2010.

Prior to the 2002-2003 school year, defendant maintained an early retirement incentive program which provided $35,000.00 to eligible teachers who, among other things, worked at least 15

years for defendant. A teacher was eligible for early retirement under this program if the teacher:

a) [was] currently a full time employee,
b) [had] 15 years or more of employment service with the school district,
c) [was] less than the age for full Social Security retirement eligibility as of August 31 of year the employee plan[ned] to retire and ha[d] a combined total of age plus credited years of service in KPERS that [was] equal to or greater than 85.
                              or
d) [met] the requirements of a) and b) above and [was] not less than 60 years of age and <u>not</u> older than the age for full Social Security eligibility as of August 31 the year the employee plan[ned] to retire.

In 2002 contract negotiations, defendant requested a transition from the defined benefit retirement plan of $35,000.00 to a defined contribution plan of $1,000.00 per full time year and/or $500.00 per half time year worked. Defendant and its teachers agreed to a "Phase Out Option" which permitted qualified teachers the option of relinquishing the portion of the vested amount in their employer-paid contribution account in return for variable annual payments each year beginning in January of the year following retirement until the year the teacher reached full Social Security retirement eligibility. The maximum total benefit a qualifying teacher could receive under the Phase Out Option was $35,000.00. A teacher was eligible in 2010 for the Phase Out Option if the teacher:

a. was employed as a full time teacher in a certified position by [defendant] during the 2001-02 contract year.

4

b. **[had] 15 years or more of full-time employment as a teacher in a certified position with [defendant] (uninterrupted by any other employment) immediately prior to retirement.**
c. [was] less than the age for full Social Security retirement as of August 31 of the year he/she plans to retire.
d. [retired] prior to the 2018-19 contract year.
e. [had] a combined total age plus credited years of service in KPERS that is equal to or greater than 85.
**OR**
f. [met] the requirements of a,b,c and d above and [was] not less than 60 years of age by August 31 of the year he/she retires.

(emphasis supplied).

Defendant denied plaintiff eligibility for the Phase Out Option on the grounds that plaintiff's half-time service during the 1995-1996 and 1996-1997 school years meant that she did not have 15 years or more of full-time employment as a teacher in a certified position with defendant (uninterrupted by any other employment) immediately prior to retirement.

III. Because the language of the Phase Out Option is ambiguous, the court shall deny summary judgment and partial summary judgment upon the breach of contract claim.

Defendant's motion for summary judgment and plaintiff's motion for partial summary judgment ask the court to find that the opposing party's construction of the Phase Out Option requirements – specifically paragraph b's provisions regarding 15 years of full-time employment (uninterrupted by any other employment) immediately prior to retirement – is unreasonable. The court finds that there is more than one reasonable

construction of the disputed language.   In other words, the language is ambiguous.

"The construction of a written instrument is a question of law [and] . . . [w]hether an ambiguity exists in a written instrument is a question of law to be decided by the court." Catholic Diocese of Dodge City v. Raymer, 840 P.2d 456, 458 (Kan. 1992).  "[C]ourts should not strain to create an ambiguity where, in common sense, there is none." First Financial Ins. Co. v. Bugg, 962 P.2d 515, 519 (Kan. 1998).  "'To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language.'" Bettis v. Hall, 852 F.Supp.2d 1325, 1334 (D.Kan. 2012)(quoting Gore v. Beren, 867 P.2d 330, 336 (1994)).  "'Where a contract is complete and unambiguous on its face, the court must determine the parties' intent from the four corners of the document, without regard to extrinsic or parole evidence.'" Id., (quoting Kay-Cee Enter., Inc. v. Amoco Oil Co., 45 F.Supp.2d 840, 843 (D.Kan. 1999)).

Here, defendant contends that "**15 years or more of full-time employment as a teacher in a certified position with [defendant] (uninterrupted by any other employment) immediately prior to retirement**" means 15 or more years of full-time employment as a teacher for defendant directly prior to retirement with no interruption by any part-time employment or

6

by full-time employment with a different employer.  This appears
to be a natural and reasonable interpretation of the language.

Plaintiff's construction of "**15 years or more of full-time
employment as a teacher in a certified position with [defendant]
(uninterrupted by any other employment) immediately prior to
retirement**" would permit the phrase to mean 15 or more years of
full-time employment as a teacher for defendant uninterrupted by
employment with a different employer and ending immediately
prior to retirement.  This also appears to be a natural and
reasonable interpretation of the language.  And, contrary to
defendant's argument, it does not render the term "immediately"
inoperative and meaningless.  Under this construction, the
person applying for the Phase Out Option must be working as a
teacher for defendant and elect the option immediately prior to
retirement, not some time after retirement.  Construed in this
manner, the term "immediately" makes the Phase Out Plan
consistent with the requirement of the prior early retirement
incentive plan where only current full-time employees were
eligible.

Defendant's interpretation of the disputed language would
be more persuasive if the controversial phrase read:  "15
[consecutive] years or more of full-time employment."  But, the
term "consecutive" is not used.  Defendant argues that the
disputed language requires "15 years . . . of full-time

employment as a teacher [for defendant] (uninterrupted by any other employment)" which has the same meaning as if "consecutive" years of full-time employment with defendant were mandated.   "Any other employment" could mean only employment with a different employer or, as defendant contends, it could include any part-time employment with defendant.   This is ambiguous in the court's opinion.

Accordingly, the court finds that the disputed language is ambiguous and we reject defendant's argument for summary judgment upon plaintiff's breach of contract claim.

Plaintiff's argument for partial summary judgment upon plaintiff's breach of contract claim asks the court to find upon the basis of parole evidence and other language in the Phase Out Option that there is no genuine issue as to the meaning of the disputed language.   The court disagrees.   The summary judgment record offered by both sides is incompatible with finding that there is no genuine issue of material fact as to the proper interpretation of the agreement.   The court is not persuaded that the surrounding circumstances with regard to the intent of the parties are sufficiently clear to permit summary judgment regarding the construction of an ambiguous contract.   See Huffman v. Saul Holdings Ltd. Partnership, 194 F.3d 1072, 1082 (10th Cir. 1999)(denying summary judgment where the record did not contain sufficient evidence to demonstrate the intent of the

parties as to an ambiguous indemnity provision); see also, <u>City of Farmington v. Amoco Gas Co.</u>, 777 F.2d 554, 560 (10th Cir. 1985)(once it is determined that a contract is ambiguous and that its construction depends on extrinsic circumstances, interpretation of the contract becomes a question of fact); <u>Schell v. OXY USA, Inc.</u>, 2012 WL 3939860 *3 (D.Kan. 9/10/2012)(summary judgment is proper to resolve an ambiguous contract only when extrinsic evidence supports only one conclusion or if no extrinsic evidence exists).

While plaintiff is correct that the court must not consider the disputed language in isolation, but must instead construe the language in light of the contract as a whole (<u>Decatur County Feed Yard, Inc. v. Fahey</u>, 974 P.2d 569, 574 (Kan. 1999)), our review of the other language in the agreement highlighted by plaintiff does not remove any ambiguity. As plaintiff notes, the Phase Out Option provides that when applying for the option, the application "shall include", among other information, the "[n]umber of years <u>contiguously</u> employed as a teacher with [defendant]." (emphasis supplied). The agreement did not provide that the application must include the number of continuous years of full-time teaching. While this point may be argued in favor of plaintiff's construction of the agreement, it is not sufficiently persuasive to remove any issue regarding the

actual intent of the agreement. Accordingly, the court shall deny plaintiff's motion for partial summary judgment.

IV.  <u>Plaintiff's promissory estoppel claim shall be dismissed because plaintiff cannot prove reliance or forbearance upon a promise</u>.

Plaintiff claims that she is entitled to enforce "promises" made when two employees of defendant told her prior to the ratification of the 2002-2003 agreement containing the Phase Out Option that it had no effect upon people who had worked for defendant for a long period of time. Doc. No. 55 at pp. 18-19. In order to invoke the doctrine of promissory estoppel, a plaintiff must establish that: "1) the defendant made a promise, 2) the promise was made under such circumstances that the promisor intended and reasonably expected the promisee to act in reliance on the promise, 3) the promisee acted reasonably in relying on the promise, and 4) a refusal by the court to enforce the promise would result in an injustice." <u>First Nat. Bankshares of Beloit, Inc. v. Geisel</u>, 853 F.Supp. 1344, 1354 (D.Kan. 1994). The promisee's reliance must be "of a substantial character." <u>Id.</u> at 1356 (citing <u>Restatement (Second) of Contracts</u> § 87(2)); see also, <u>Kirkpatrick v. Seneca National Bank</u>, 515 P.2d 781, 786 (Kan. 1973)(requiring reliance or forbearance of a substantial character); P.I.K. Civil 124.13 (2011)(defining promissory estoppel as requiring reliance or

forbearance "of a definite and substantial character on the part of the promisee").

One of defendant's arguments for summary judgment against plaintiff's promissory estoppel claim is that plaintiff cannot prove action or forbearance in reliance upon an alleged promise by defendant.  As defendant notes, it is undisputed that plaintiff was told before she took retirement that she would not be eligible for the Phase Out Option unless she worked another two years.  In response, plaintiff alludes to "years of reliance" before she was told in 2010 that she would have to work two more years to qualify for the Phase Out Option.  Doc. No. 55 at p. 21.  Plaintiff also makes citation to Kirkpatrick v. Seneca Nat. Bank, 515 P.2d 781 (1973).

The court finds that there is no reasonable possibility that plaintiff can establish reliance of a substantial character in order to prevail upon a claim of promissory estoppel.  In Geisel, the court held that substantial reliance was not established by the plaintiffs' claim that they continued to work for a bank in reliance upon a promise that one day they would have the opportunity to buy a controlling interest in the bank after the death of the holder of the controlling interest.  We believe the same holding should apply here.  Plaintiff was paid for her employment.  Plaintiff has described no claim of

reliance or forbearance of substantial character which would sustain a claim of promissory estoppel.

Nor does the Kirkpatrick case rescue plaintiff's claim. In Kirkpatrick, the plaintiffs were accountants who performed work auditing the books of a debtor of a bank upon the promise of the bank that it would direct payment to the accountants out of the debtor's funds which were under the bank's control. The court held that the accountants performed the services in reliance upon the bank's promise and that the failure to enforce the promise would result in injustice. Here, plaintiff was paid for her teaching work and she makes no claim describing what she lost because at a previous time she relied upon an alleged representation that she would be eligible for the Phase Out Option whenever she decided to retire.

V. Plaintiff does not allege a legislative act which would support a Contracts Clause claim.

Plaintiff claims that defendant's interpretation of the Phase Out Option language in the negotiated agreement violates the Contract Clause of the Constitution. Defendant contends that summary judgment against this claim is warranted because plaintiff does not claim that a unilateral or legislative action was taken as required to violate the Contract Clause.

Article I, § 10, of the Constitution provides:  "No State shall . . . pass any . . . Law impairing the Obligation of

12

Contracts."   There are three elements commonly analyzed in a Contracts Clause claim:   "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992).

We agree with defendant that plaintiff alleges a breach of contract, not a "change in law" which impairs a contractual relationship.   Therefore, plaintiff's Contracts Clause claim must be dismissed.   See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 283 n.33 (1985)(Brennan, J., dissenting)(indicating that cases involving a simple breach of contract do not concern a law impairing the obligation of contracts to which the Contracts Clause applies and citing Shawnee Sewerage & Drainage Co. v. Stearns, 220 U.S. 462, 470-71 (1911); Brown v. Colorado, 106 U.S. 95, 98 (1882)); Handi-Van Inc. v. Broward County, Florida, 445 Fed.Appx. 165 *4 (11th Cir. 8/24/2011)(a state does not violate the Contracts Clause whenever it breaches a contract); see also, Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1250-51 (7th Cir. 1996)(the ability to recover breach of contract damages means the obligation created by the contract is not impaired).

VI.   <u>Plaintiff cannot sustain the burden of proving a violation
of the duty of good faith and fair dealing</u>.

Plaintiff asserts that defendant violated its obligation of
good faith and fair dealing in performing its agreement with
plaintiff by making misrepresentations during a nonbinding
arbitration proceeding concerning plaintiff's claim to the Phase
Out Option.  According to the pretrial order, defendant told the
arbitrator that if the Phase Out Option was approved for
plaintiff it would make 238 additional individuals eligible for
the option and potentially impose a great cost upon defendant,
when in fact there is one other employee that would be eligible.
Doc. No. 45 at p. 6.  This misrepresentation, according to
plaintiff, denied plaintiff the benefits of the arbitration
procedure provided under plaintiff's contract with defendant.

Defendant makes the following arguments for summary
judgment against plaintiff's good faith and fair dealing claim:
1) defendant's statement to the arbitrator is not false or
misleading, "particularly when read in context" (Doc. No. 53 at
p. 19); 2) the arbitrator did not base his decision against
plaintiff upon that statement; 3) no court has extended a duty
of good faith and fair dealing to conduct in an adversarial
proceeding like an arbitration; and 4) any statements made
during an arbitration proceeding are absolutely privileged.

Kansas law implies a duty of good faith in every contract. Law v. Law Co. Bldg. Assocs., 210 P.3d 676, 682 (Kan.App. 2009) rev'd on other grds, 289 P.3d 1066 (Kan. 2012). This duty includes "not intentionally and purposely do[ing] anything to prevent the other party from carrying out his part of the agreement, or do[ing] anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Bonanza, Inc. v. McLean, 747 P.2d 792, 801 (Kan. 1987)(interior quotation omitted). "[I]n order to prevail on an implied duty of good faith and fair dealing theory under Kansas law, plaintiffs must (1) plead a cause of action for 'breach of contract,' not a separate cause of action for 'breach of duty of good faith," and (2) point to a term in the contract 'which the defendant[] allegedly violated by failing to abide by the good faith spirit of that term.'" Wayman v. Amoco Oil Co., 923 F.Supp. 1322, 1359 (D.Kan. 1996)(quoting Pizza Management, Inc. v. Pizza Hut, Inc., 737 F.Supp. 1154, 1184 (D.Kan. 1990)). In this case, plaintiff appears to argue that she was denied the fruits of the arbitration provisions of the contract by defendant's misrepresentations during the arbitration proceeding.

The court shall grant summary judgment against this claim for two reasons. First, plaintiff has the burden to show that defendant's alleged misconduct caused plaintiff to be denied the

15

benefits of a fair arbitration hearing. Defendant has argued that there is no evidence that its alleged misrepresentation had any impact upon the arbitrator's decision. Plaintiff responds that this is an issue of fact without making any reference to evidence supporting plaintiff's claim that defendant's statement had an impact upon the decision. Plaintiff only refers to a statement within the decision that the early retirement incentive is wholly funded by the employer. This would not support a reasonable inference that the arbitrator was influenced in his decision by the alleged inaccurate statements regarding the number of employees who would qualify for the option if plaintiff was considered eligible for it. As mentioned previously, summary judgment may be granted when there is an absence of evidence on a point upon which the non-moving party has the burden of proof. Adams, 233 F.3d at 1246.

Second, we believe it is helpful to consider cases brought under the Federal Arbitration Act, 9 U.S.C. § 10(a). This act permits federal courts in some situations to vacate an award of an arbitrator, including situations "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). This can be compared to a finding that a party was denied the fruits of a fair arbitration proceeding because an opposing party acted in bad faith.

Courts have interpreted "undue means" as requiring some type of bad faith behavior. <u>Pontiac Trail Medical Clinic v. PaineWebber, Inc.</u>, 1993 WL 288301 *4 (6th Cir. 7/29/1993)(citing <u>Shearson Hayden Stone, Inc. v. Liang</u>, 493 F.Supp. 104, 108 (N.D.Ill. 1980)). It does not include "mere sloppy or overzealous lawyering." <u>A.G. Edwards & Sons, Inc. v. McCollough</u>, 967 F.2d 1401, 1403 (9th Cir. 1992) <u>cert. denied</u>, 506 U.S. 1050 (1993). In addition, courts have determined that "undue means" does not include: arguably inappropriate use of an arrest record as evidence (<u>American Postal Workers Union v. U.S. Postal Service</u>, 52 F.3d 359, 362 (D.C.Cir. 1995)); offering a meritless defense (<u>McCollough</u>); withholding relevant information (<u>Liang</u>, 493 F.Supp. at 108-09); engaging in <u>ex parte</u> communications with an arbitrator (<u>Barcume v. City of Flint</u>, 132 F.Supp.2d 549, 556 (E.D.Mich. 2001)); and making an allegedly intimidating and improper argument (<u>Specialized Distribution Management, Inc. ("SDMI") v. Brotherhood of Teamsters</u>, 1995 WL 688662 *7-8 (N.D.Cal. 11/13/1995)). In two of the above-cited cases, the plaintiffs also brought claims of breach of the duty of good faith and fair dealing which were rejected by the courts. <u>Pontiac Trail</u>, at *5; <u>SDMI</u>, at *10. As in these cases, the court finds that plaintiff has not sufficiently alleged the type of bad faith behavior that would constitute a breach of the duty of good faith and fair dealing.

17

Moreover, the Tenth Circuit has stated: "The courts seem to agree that a fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decisionmakers, and that the decisionmakers are not infected with bias." Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., 22 F.3d 1010, 1013 (10th Cir. 1994). In Bowles, the Tenth Circuit held that this standard was not violated during an arbitration hearing in which an attorney repeatedly mentioned a party's settlement offer to the arbitrators in violation of well-established judicial rules of evidence and conduct. It does not appear to the court that the alleged misconduct claimed by plaintiff rises to a level to have denied plaintiff a fundamentally fair hearing as defined in Bowles or to have violated the duty of good faith and fair dealing.

In sum, the court shall dismiss plaintiff's claim because plaintiff cannot prove the defendant's alleged misconduct had an impact upon the arbitration decision and because the statement does not rise to the level of misconduct which would deprive plaintiff of a fair arbitration hearing.

VII.    Plaintiff's effort to argue for reformation of the negotiated agreement upon the grounds of mutual mistake shall be rejected as untimely.

Plaintiff argues that she should be permitted to request the remedy of reformation of the contract upon the grounds that

the parties to the negotiated agreement made a mutual mistake. The United States Magistrate Judge presiding over the conference for the pretrial order in this case denied permission to "amend" plaintiff's claims to add reformation on the grounds that: it was a new claim not previously pled; that the request was unjustifiably late; and that it would cause defendant prejudice by requiring the re-opening of discovery. Plaintiff asked for reconsideration by the Magistrate Judge which was denied. Doc. No. 57. The Magistrate Judge stated in his order denying reconsideration that the amended complaint made no allegation that the parties mistakenly drafted the contract; that mistake must be specifically pleaded under FED.R.CIV.P. 9(b); and that plaintiff failed to demonstrate good cause to amend to add the "previously unplead[ed] factual and legal theory at the time of the Pretrial Conference." Id. at pp. 2-3. Plaintiff has filed objections to this order (Doc. No. 60) and has reasserted a claim for reformation in her motion for partial summary judgment.

Plaintiff argues that reformation is not a claim, but a remedy for the parties' mutual mistake in drafting the negotiated agreement. Plaintiff further argues that she sufficiently pleaded the circumstances of the alleged mutual mistake in the amended complaint to provide notice to defendant and the court.

Upon review, the court is willing to grant that reformation may be considered a remedy and not a cause of action. <u>Harvey v. Bank of America</u>, 2012 WL 5337425 *7 (N.D.Cal. 10/26/2012); <u>Diaz-Amador v. Wells Fargo Home Mortgages</u>, 856 F.Supp.2d 1074, 1082-83 (D.Ariz. 2012). Nevertheless, if reformation is sought to correct a mutual mistake, the burden is upon plaintiff to allege and prove facts showing a mutual mistake. <u>Sunfresh, Inc. v. Bean Acres, Inc.</u>, 180 F.Supp.2d 1224, 1230 (D.Kan. 2001). This includes making an allegation of a mistake in drafting the agreement (<u>Id.</u>, citing <u>Geiger v. Hansen</u>, 519 P.2d 699, 702-03 (Kan. 1974)) and an allegation that the mistake is mutual (<u>Northern Pac. Ry. Co. v. U.S.</u>, 277 F.2d 615, 619 (10th Cir. 1960)). See also, <u>Unified Government of Wyandotte County/Kansas City v. TransWorld Transp. Services, L.L.C.</u>, 227 P.2d 992, 995 (Kan.App. 2010)(listing elements of mutual mistake).

Plaintiff's amended complaint alleged the language of the Phase Out Option. See Doc. No. 33 at ¶ 14. Plaintiff's amended complaint also alleged the intent of the Phase Out Option. <u>Id.</u> at ¶¶ 13, 15-16.

We disagree with plaintiff that this language within the amended complaint sufficiently alleges mutual mistake. The amended complaint does not identify a mistake in drafting the agreement, or allege that the mistake was mutual, or allege that the agreement failed to embody the real agreement of the

20

parties, or explain how the mistake was made. These are the kind of allegations which would be relevant to an allegation of mutual mistake to support a remedy of reformation. <u>Northern Pac. Ry. Co.</u>, <u>supra</u>; <u>Phillips Medical Capital, LLC v. Medical Insights Diagnostics Center, Inc.</u>, 471 F.Supp.2d 1035, 1047 (N.D.Cal. 2007)(quoting <u>Lane v. Davis</u>, 342 P.2d 267, 270-71 (Cal.App. 1959)). Indeed, the amended complaint never uses the term "mutual mistake."

Therefore, to warrant adding the claim of mistake to this case after the deadline for such amendments plaintiff must provide good cause for her untimely effort under FED.R.CIV.P. 16(b), and also show that the amendment is permitted under the standards for motions to amend set forth in FED.R.CIV.P. 15(a). <u>McWilliams v. King</u>, 2012 WL 1673028 *2 n.13-15 (D.Kan. 5/14/2012)(an order from Magistrate Judge Waxse citing numerous district court opinions). It should also be noted that in the Tenth Circuit, undue delay alone may be a sufficient basis for denial of leave to amend. <u>Minter v. Prime Equipment Co.</u>, 451 F.3d 1196, 1205-06 (10th Cir. 2006); <u>Durham v. Xerox Corp.</u>, 18 F.3d 836, 840-41 (10th Cir. 1994); <u>Woolsey v. Marion Laboratories, Inc.</u>, 934 F.2d 1452, 1462 (10th Cir. 1991); <u>Las Vegas Ice & Cold Storage Co. v. Far W. Bank</u>, 893 F.2d 1182, 1185 (10th Cir. 1987). Plaintiff does not make a good argument to justify the delay in requesting the amendment under either Rule

16 or Rule 15.   Therefore, the court shall deny plaintiff's objections to the Magistrate Judge's order and reject plaintiff's argument for reformation in her motion for partial summary judgment.

## VIII.   <u>Conclusion</u>

In conclusion, plaintiff's motion for partial summary judgment (Doc. No. 50) shall be denied.   Plaintiff's objections to the Magistrate Judge's order (Doc. No. 60) are denied. Defendant's motion for summary judgment (Doc. No. 52) shall be granted in part and denied in part.   The motion is granted as to all of plaintiff's claims except for plaintiff's breach of contract claim.

**IT IS SO ORDERED.**

Dated this 1st day of February, 2013 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge